Brady, J.
The Indianapolis, Bloomington and Western Railway Company, a consolidated company of Indiana and Illinois, had outstanding three several issues of bonds, secured by mortgages of its roads, equipments and franchises, and defaults in the payment of interest having occurred, suits of foreclosure were commenced to obtain a judicial sale of the property mortgaged. For mutual protection certain stockholders of the several classes of bonds-voluntarily united in a plan by which the railroad and its appurtenances were to be bought on joint account and a. new company formed to maintain and operate the road and. *213 to represent their several proportionate interests in the purchase by a pro rata distribution of the stocks and bonds of the new company among the subscribers. In order to carry out and complete this scheme a committee was appointed, ■composed of the defendants Corbin, Taintor and Sully, one Blossom having been originally named, but declining to serve, and Sully having been selected for his place.
The foreclosure proceedings were commenced in 1874, the original agreement dated December, 1875, the decree made in 1879, the sale made in October following, and this action brought in 1884 (March). The plaintiff knew nothing of •any of these proceedings until just prior to the commencement of this action, but she promptly resorted, when advised of them, to the necessary measures to secure all the advantages accruing from the plan adopted, holding, as she ■did, bonds of the company. Her counsel presented several reasons why she is entitled to the issue of new bonds, notwithstanding the delay of several years, chief among which, and the most attractive, is her ignorance of the proceedings—her consequent good faith and equitable standing— which courts in the administration of justice will be careful to recognize and protect. The proceedings to foreclose were, however, necessarily public, and it is to be presumed legally and therefore publicly conducted, and as much notice given to her as to others, who were doubtless on the alert when she was reposing upon her faith in the integrity and value of the bonds. Hone of the elements mentioned, however, and indeed none of the facts set out on her behalf, save as to one element of it which will be hereafter considered, would be of any value to her under the decision in Vatable v. N. Y., L. E. and W. R. R. Co. (96 N. Y., 49), which disposes of a kindred case, excepting only that the plaintiff in it possessed stock and not bonds, but that, it is thought, could make no difference, for the reason that under proceedings to foreclose the mortgages the bonds predicated of them must necessarily succumb, the bondholders having no interest in anything but a surplus, if one ■existed.
The whole plan was one for the benefit of bondholders uniting or subscribing, and as all had an opportunity to unite, none were excluded by the arrangement adopted. Hot only was this result secured by the original compact, but by a supplementary agreement made in July, 1878, it was provided that the purchasing committee, the defendants Corbin, Taintor and Sully, might, at any time prior to the sale, receive additional signatures to that agreement from outstanding bondholders, and subsequently thereto upon such other terms as to the committee might seem meet.
*214 The plaintiff claims that at all events she was entitled to-bonds upon the surrender of hers of a special character, particularly described in the complaint under this provision, and that her demand for them was in due time, for the1 reason that the committee, on the 15th of May, 1879, prescribed the terms upon which the outstanding bondholders, might avail themselves of the benefits of the contract and subscribe for the same and make the desired deposit of the old bonds in the manner provided. And the complaint thus, states the facts to be and further, that said terms were prescribed in writing, signed by each of said committee, dated on May 15, 1879, and were that the new securities to-be thereafter issued should be delivered subject only to delay involved in recovering the funds them on deposit in court, by said committee for the redemption of said bonds, and each certificate of deposit issued thereafter was stamped across the face, “this certificate is subject to the special instructions from the committee, dated May 15, 1879.” And then also alleges that the terms were never limited or-qualified in any maimer and are now in full force and effect.
Assuming these facts to be true, the plaintiff was in due time in making her demand, and it should have been complied with, it appearing from other allegations in the complaint that the new issues were not exhausted. The-appellants feel the force of these allegations, which are the saving ones of the complaint, and without which it would seem the plaintiff could not recover in consequence of the-principles established by Vatable v. N. Y., L. E. and W. R. R. Co. (supra).
The learned counsel for the appellants seeks to overcome-this force by invoking the allegations in the twelfth paragraph of the complaint, which, however, reassert in effect, that the committee never limited or qualified the terms imposed, as already stated, because of these further allegations; and, notwithstanding that said contract is in full, force and effect, individual members of said committee-have (to accomplish the purpose of obtaining for their own benefit unlawful pecuniary profits while still acting as trustees for said bondholders), wrongfully instructed said defendant trust company to refuse to receive further bonds-under the terms of said contract.
That said wrongful instructions were conveyed to said trust company on or about September 12, 1879, and that thereupon the market value of the bonds then outstanding and not exchanged for certificates, became much lower-than theretofore.
That such instructions were not given by the said committee officially, nor were they authorized by said committee, nor did said committee pass or adopt any resolution. *215 excluding said outstanding bonds, nor did said committee have any power so to do under said contract. That said instructions were given with the purpose of hunting the rights of said bondholders under said contract, and in order that individual members of said committee might be more readily enabled to purchase said outstanding bonds at a greatly reduced price, and for their own profit, and to thereafter issue to themselves the new securities pertaining-thereto respectively. That as plaintiff is informed and behoves, individual members of said committee have since said, wrongful instructions to said defendant trust company, purchased for their own profit certain of the said outstanding-bonds, hereinabove referred to, at a price far below the market values of the new securities, to which the holders would, have been entitled upon compliance by them with the condition of said contract before said instructions were given;, that, thereupon, they issued, or are about to issue, to themselves the said new securities in hke manner as though said wrongful instructions had not been given. And, further, for the purpose of deceiving said bondholders, and of being enabled to purchase said outstanding bonds at a price below their real value, one of the members of said purchasing committee, while acting as such trustee, represented to said, defendant trust company, with the intent that the public, and especially said bondholders, should be so informed, that the only value which said outstanding securities bore-was as follows, respectively, viz.: “The Danville bonds” were each worth $168.95; said “first mortgage bonds”’ were each worth $81.84; said “second mortgage bonds” had no market value. That said representations were made about August, 1883. That the same were in all respects-false and untrue, and that the same were known to be false when so made.
These charges do not limit the effect of the allegations-under consideration. They show an unlawful attempt only for an unlawful purpose and in an unlawful manner to limit the terms, which could not be done but by concerted action of the committee, or a majority of it, in the exercise of their power and for the benefit of the corporation, and not for their own. This conclusion is too clear to admit of question. The effect of the allegations thus considered is - such, therefore, as makes a prima facie cause of action, and makes the order appealed from just and proper.
The order must be affirmed, but with liberty to the defendants to answer on payment of costs.
Daniels, J., concurs.